**A. V. GOODPASTURE, Plaintiff-Appellant,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.**

**No. 20305.**

United States Court of Appeals, Sixth Circuit.

Nov. 27, 1970.

---

Philip M. Carden, Nashville, Tenn., for plaintiff-appellant.

Thomas A. Pedersen, Sol., Tennessee Valley Authority, Knoxville, Tenn., for

defendant-appellee; Robert H. Marquis, Gen. Counsel, William W. Hurst, Tennessee Valley Authority, Knoxville, Tenn., on brief.

Before PHILLIPS, Chief Judge, and EDWARDS and CELEBREZZE, Circuit Judges.

PHILLIPS, Chief Judge.

This appeal is from an order of the District Court dismissing the complaint of appellant, which challenges the eminent domain power of the Tennessee Valley Authority (TVA). Under threat of exercise of the power of eminent domain, TVA purchased an easement for a transmission line across one corner of a tract of land owned by appellant in Montgomery County, Tennessee. Thereafter TVA undertook to acquire by purchase two additional easements. When negotiations were unsuccessful for the acquisition of these two later easements, TVA threatened to institute condemnation proceedings to effect their acquisition.

Appellant's complaint prayed for an order (1) prohibiting TVA from filing any condemnation suit affecting the appellant's land except in this action; (2) rescinding the power line easement previously deeded by appellant to TVA; (3) granting a declaratory judgment to the effect that the TVA statute on its face is unconstitutional in its entirety, or at least to the extent of the parts applied to appellant; (4) for damages for TVA's "breach of contract;" and (5) for certain additional or alternative equitable relief which we find unnecessary to narrate in detail.

The facts averred in the complaint, which are accepted as true for purposes of this appeal, in summary are as follows:

The tract of land in question has been the home place of appellant and his family for several generations and he has no desire to sell it or alter its present use as a farm during his lifetime; appellant now lives in Nashville and does not reside on the land involved in this litigation; the farm is being operated by a manager under a written ten-year management contract; in 1967 TVA began negotiations, under threat of an eminent domain action, for the acquisition by warranty deed of a power line easement over a corner of appellant's farm; appellant, "desiring to buy peace," made a counter-offer to sell the easement in return for being excused from warranting title against any claim his farm manager might make under appellant's ten year agreement with the manager; after negotiations, appellant signed a deed on June 24, 1968, conveying the easement for the power line which contained no warranty against claims of the farm manager; TVA accepted delivery of this deed and paid the agreed price to appellant on September 6, 1968.

The complaint further avers that, some six months after payment for the first easement, TVA began negotiations, again under threat of condemnation proceedings, for the purchase of two additional easements across appellant's farm, one for a power transmission line and the other for a railroad spur track. After TVA had indicated a willingness to accept again a deed without a warranty against the rights of the farm manager, and after appellant had executed such a deed conveying these two easements, TVA demanded a warranty deed for the two later easements signed both by appellant and his farm manager. Appellant refused to execute a deed with a complete warranty clause and this litigation ensued.

After the District Judge had granted the motion to dismiss the complaint, appellant filed a petition for rehearing which, among other things, asserted that the District Judge erred in denying the injunction to restrain enforcement of the act of Congress and in passing upon the constitutionality of the statute without convening a three-judge district court pursuant to 28 U.S.C. §§ 2282 and 2284, and that the District Court erred in dismissing the action without a hearing.

The principal contentions made by appellant on this appeal are the following:

(1) That the Government of the United States has no power of eminent domain; that the power of eminent domain, if it ever existed under the common law of England, passed to the States and not to the federal government; and that the power was not delegated to the federal government by the States under any provision of the Constitution;

(2) that the power of eminent domain has not been delegated validly by Congress to TVA;

(3) that the TVA Act is unconstitutional;

(4) that the federal courts, under Article 3 of the Constitution, have no jurisdiction to entertain eminent domain actions;

(5) that the District Court was not authorized to pass upon the constitutionality of the TVA statute and deny the injunction prayed for without the convening of a court of three judges;

(6) that the complaint states a cause of action and raises issues of fact which, if proved, would require recission of the power line easement previously granted by appellant to TVA; and

(7) that the District Judge was guilty of reversible error in granting the motion to dismiss the complaint without a hearing.

We find all these contentions to be completely without merit under long-settled precedent.

■ There can be no doubt that the United States Government possesses the power of eminent domain as an attribute to sovereignty. Hanson Lumber Co. v. United States, 261 U.S. 581, 43 S.Ct. 442, 67 L.Ed. 809.

■ The power of eminent domain has been delegated by Congress to TVA. 16 U.S.C. §§ 831c(h), 831c(i) and 831x. United States ex rel. TVA v. Welch, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843; United States v. Easement and Right of Way Over Two Tracts of Land, 375 F.2d 120 (6th Cir.), aff'g, 246 F.Supp. 263 (W.D.Ky.); Rainbow Realty Co. v. TVA, 124 F.Supp. 436, 439–40 (M.D.Tenn.).

■ The TVA Act is constitutional. Tennessee Electric Power Co. v. TVA, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543, aff'g judgment of three-judge court (Allen, Circuit Judge, and Gore and Martin, District Judges), reported at 21 F.Supp. 947 (E.D.Tenn.); Ashwander v. TVA, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; United States v. An Easement and Right-of-Way Over Two Tracts of Land, *supra*.

■ Article 3 of the Constitution extends by its own terms "to Controversies to which the United States shall be a Party." The TVA Act, 16 U.S.C. § 831x, specifically authorizes TVA to institute eminent domain proceedings in the name of the United States and confers jurisdiction on the appropriate United States District Courts over such proceedings.

■■ 28 U.S.C. § 2282 requires the convening of a three-judge district court for the granting of an injunction "restraining the enforcement, operation or execution of any act of Congress for repugnance to the Constitution of the United States." The District Court correctly held that the convening of a three-judge court is required only when a substantial constitutional question is presented. Jones v. Branigin, 433 F.2d 576 (6th Cir., decided October 21, 1970) and cases therein cited. We hold that no substantial constitutional question is presented by the complaint in the present case.

■ We agree with the District Judge that the complaint states no cause of action for the recission of the deed previously executed by appellant granting to TVA an easement across the corner of his farm. The complaint recites that appellant signed a deed conveying that easement and has been paid the agreed amount of consideration. Appellant asserts that he executed this deed unwillingly and only under duress of a threat of condemnation. It is well settled that a statement by an agency possessing the

power of eminent domain that it will exercise that power if a voluntary sale cannot be negotiated does not constitute duress and affords the seller no grounds for cancelling such a sale. As said in Beatty v. United States, 168 F.Supp. 204, 206, 144 Ct.Cl. 203:

"It is true that plaintiffs say that they were told that if they did not sell their properties to the Government at the appraised price, they would be condemned, and that in that event they would have to pay lawyer's fees, which would eat up the amount awarded them, and that it would take many years, perhaps as many as 25, for them to get any money out of it. That they were told that, if they did not sell, their property would be condemned, was not duress. This was a mere statement of the inevitable consequence of their refusal to sell. It was a frank statement of an intention to seek a remedy which the law gave. It is never duress to institute or threaten to institute civil suits where the threat to do so is made in the honest belief that a good cause of action exists. Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 1 Cir., 176 F.2d 799, affirmed 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312; Du Puy v. United States, 67 Ct.Cl. 348, certiorari denied 281 U.S. 739, 50 S.Ct. 346, 74 L.Ed. 1153; Moseley v. Owensboro Municipal Housing Comm., Ky., 252 S.W.2d 880; Roelvink v. City of Milwaukee, 273 Wis. 605, 79 N.W.2d 106.

"A party is always entitled to say that if his offer is not accepted, he will avail himself of his legal rights; it is only the threat of a wrongful or unlawful act that may constitute duress."

■ We further hold that the complaint avers no facts constituting a failure of consideration or breach of contract with respect to the deed for the first right of way easement across the corner of appellant's farm. Appellant seems to contend that there was a failure of consideration because TVA agreed not to initiate eminent domain proceedings if appellant would sign a deed for the easement. It is apparent from the averments of the complaint that any such agreement on the part of TVA related only to the first easement. The complaint shows that appellant was represented by an attorney who handled negotiations leading up to the first conveyance, and that it was appellant's counter-offer which finally was settled upon as a basis for the conveyance of the first easement. Thereafter appellant executed a deed conveying this easement in accordance with the agreed terms and was paid the agreed consideration. We hold that, under the averments of the complaint, there was no breach of contract on the part of TVA by its subsequent steps to acquire two additional easements over appellant's farm.

■ Further, we hold that the District Judge did not commit reversible error in granting the motion to dismiss the complaint without a hearing. Rule 78, Fed.R.Civ.P., provides that District Courts "may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition."

The United States District Court for the Middle District of Tennessee adopted a rule on March 20, 1968, providing as follows:

"All motions filed in civil actions shall be accompanied by a brief, including a citation of authorities. After the filing of a motion, other parties to the action are allowed ten (10) days within which to file such brief written statement in opposition thereto as desired. The motion may then be determined without oral hearing."

In the judicial administration of the heavy dockets of the United States Courts, litigants are not entitled as a matter of right to an oral hearing on every motion. District Courts, Courts of Appeals and the Supreme Court dispose of many motions, including motions to dismiss, without oral hearings. See

Rule 8, Rules of Court of Appeals for the Sixth Circuit.

■ We hold that District Judge William E. Miller did not err in failing to recuse himself because of a law review article written by him entitled "Federal and State Condemnation Proceedings—Procedure and Statutory Background," 14 Vand. L.Rev. 1085.

We further hold that the District Court did not err in refusing to grant an injunction to appellant restraining TVA from instituting condemnation proceedings for the acquisition of easements across the farm of appellant. Travis v. Pennyrile Rural Electric Cooperative, 399 F.2d 726, 729 (6th Cir.).

Two other contentions of appellant require mention.

On the hearing docket of this Court this appeal was assigned to the Summary Calendar, meaning that oral argument was limited to fifteen minutes on each side. Counsel for appellant made an oral motion to transfer the case from the Summary Calendar to the Regular Calendar. This motion was overruled from the bench. For the reasons set forth in Appendix A we now reaffirm our decision announced from the bench in overruling the motion of appellant for the transfer of this appeal from the Summary Calendar to the Regular Calendar.

Appellant also has moved to strike from the appendix of TVA the complaint filed in the District Court, the declaration of taking, and the answer in a separate condemnation action filed by TVA to acquire the additional easements over the farm of appellant. These documents are not a part of the record in the present case, and were not considered by the District Judge. The motion to strike was sustained during oral argument, and it is so ordered. It should be observed, however, that this Court can take judicial notice of the pleadings in the condemnation case. Travis v. Pennyrile Rural Electric Cooperative, *supra,* 399 F.2d 726, 729 (6th Cir.).

Numerous other contentions are made by appellant, all of which have been considered and found to be without merit.

The judgment of the District Court dismissing the complaint is affirmed.

### APPENDIX A

The assignment of the instant appeal to the Summary Calendar was made pursuant to Rule 7(e), Rules of this Court, supplementing the Federal Rules of Appellate Procedure. Rule 7(e) provides as follows:

"(e) *Summary Calendar.* Whenever the court, sua sponte or on a suggestion of a party, concludes that a case is of such character as not to justify extended oral argument, the case may be placed on the summary calendar.

"In all such cases, except on special order, each side will be permitted only fifteen minutes for the argument, and only one counsel will be heard on the same side. No separate summary calendar will be maintained. Cases will be placed on the summary calendar by the clerk, pursuant to directions from the court, and such cases may or may not be heard on days set for oral argument of cases not on the summary calendar."

Rule 7(e) and companion Rules 3(e), 8 and 9 were adopted by this Court December 12, 1967,[1] for the purpose of maintaining more effective docket control and in order to make it possible for the Court to hear oral arguments in more cases. It is the practice of the judges of this Court to read the briefs and to familiarize themselves with the issues in advance of oral argument. It

[1] These rules were adopted as amendments to the then existing rules of this Court, prior to the adoption of the Federal Rules of Appellate Procedure. They originally were designated as Rule 19(5) (Summary Calendar), Rule 18(5) (Motions to Dismiss or Affirm), Rule 16(6) (Frivolous and Unmeritorious Appeals), and Rule 3(5) (Docket Control).

was concluded that adequate hearings of selected cases could be accomplished by limiting oral argument on certain appeals to a maximum of fifteen minutes on each side.

The word "summary" was selected to describe cases assigned for shorter oral arguments because, at the time the above-quoted rule was adopted, the Supreme Court had a "Summary Calendar" to which cases were assigned for abbreviated argument. This Court followed the precedent of the Supreme Court in using the word "summary."

Under its rules and practice, this Court maintains a Regular Calendar and a Summary Calendar. In cases assigned to the Regular Calendar a maximum of thirty minutes of oral argument generally is allowed on each side, as provided by Rule 34(b), Fed.R.App.P. In cases on the Summary Calendar a maximum of fifteen minutes of oral argument is allowed on each side. All cases are screened in advance of oral argument by a panel of three judges designated by the Chief Judge under Rule 3(e).[2] Assignments to the Regular or Summary Calendars are made by these panels.

The word "summary" in Rule 7(e) quoted above is not an accurate description of the procedure of this Court in hearing and deciding cases in which oral arguments are limited to fifteen minutes on each side. The same consideration is given to Summary Calendar cases as to Regular Calendar cases. The assignment of a case to the Summary Calendar does not mean that it is considered to be an appeal of lesser importance than Regular Calendar cases. To the contrary, many important and difficult cases are assigned to the Summary Calendar, which often are disposed of by written opinions. When only one or two issues are involved, or when the principal issue is one of sufficiency of the evidence, experience has demonstrated that an oral argument limited to a maximum of fifteen minutes for each side generally is sufficient. In short, assignment of a case to the Summary Calendar does not mean "summary" treatment or disposition. 1970 U.Tol.L.Rev. 71.

Following the adoption of its new rules in 1967 for advance screening and improved docket control, including the Summary Calendar, this Court has heard oral arguments in an increased number of cases per year. Terminations each year since 1967 have exceeded the growing annual volume of new appeals. During the fiscal years 1968, 1969 and 1970 reductions have been made in the Court's backlog. As of June 30, 1967, 686 cases were pending. As of June 30, 1970, the backlog had been reduced to 489. From 1962 to 1970 the volume of appeals increased from 394 to 911, an all-time high. During 1970, 1004 cases were terminated, also an all-time high. These procedures enable each active judge of the Court to hear oral arguments in 180 or more appeals per year, with each case receiving thorough consideration. During its June 1970 session the Court heard every case on its docket which was ready for oral argument. The clerk of the Court, Mr. Carl W. Reuss, states that this was the first time all ready cases have been heard at any term since he became deputy clerk in 1926.

The effectiveness of the new rules adopted by this Court in 1967 is demonstrated by the following statistics of the Administrative Office of the United States Courts:

| Fiscal Year | Filed | Terminated | Pending at end of fiscal year |
|---|---|---|---|
| 1962 | 394 | 329 | 280 |
| 1963 | 374 | 341 | 313 |
| 1964 | 513 | 404 | 422 |
| 1965 | 638 | 497 | 563 |
| 1966 | 603 | 510 | 656 |
| 1967 | 717 | 687 | 686 |
| 1968 | 793 | 818 | 661 |
| 1969 | 868 | 947 | 582 |
| 1970 | 911 | 1004 | 489 |

2. Rule 3(e), "Docket Control. In the interest of docket control, the chief judge may from time to time, in his discretion, appoint a panel or panels to review pending cases for appropriate assignment or disposition under Rules 7(e), 8 or 9 or any other rule of this Court."