Charles E. BUCK, et al., Plaintiffs–
Appellants,

v.

U.S. DEPARTMENT OF AGRICULTURE,
FARMERS HOME ADMINISTRA-
TION, et al., Defendants–Appellees.

No. 91–3597.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 31, 1992.

Decided April 6, 1992.

Randall J. Luginbuhl, Columbus, Ohio (argued and briefed), for plaintiffs-appellants.

Albert Ritcher, Office of the U.S. Atty., O. Charles Hosterman, Columbus, Ohio (argued and briefed), for defendants-appellees.

Before: KENNEDY and GUY, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

The plaintiff Charles E. Buck[1] appeals from an order of the district court denying his motion pursuant to Fed.R.Civ.P. 60(b) to set aside the district court's previous judgment dismissing this case for lack of prosecution. No plaintiff appealed from the final judgment of dismissal, and the only question before us is whether the district court abused its discretion in denying the motion to set the judgment aside. In deciding this question, we must examine the complaint and amended complaint to determine whether these pleadings present-

---

1. There were four plaintiffs, all Buck family members, in the district court, and that court dismissed the claims of all. The caption on the Notice of Appeal, however, listed the appellants as "CHARLES E. BUCK, et al." Under this court's reading of FED.R.APP. 3(c), a notice of

appeal so captioned brings to this court the appeal of the named appellant only. *Minority Employees of the Tennessee Department of Employment Security, Inc. v. State of Tennessee,* 901 F.2d 1327, 1330 (6th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).

ed one or more meritorious claims. In addition, we will consider the proceedings in the district court that culminated in dismissal.

## I.

### A.

From 1980 through 1984 Charles and Carol Buck, husband and wife, applied for and received operating loans from the Farmers Home Administration (FmHA), secured by an interest in "crops, livestock, supplies, other farm products, and farm and other equipment" and real estate. FmHA perfected this interest by filing a number of financing statements in Champaign and Logan Counties, Ohio. All but one of the financing statements were later released by FmHA as the Bucks paid off portions of their debt. Because the remaining financing statement was due to lapse under Ohio law on September 5, 1985, FmHA sent the Bucks a "Request for Continuation Statement Filing Fee" on August 14, 1985. The Bucks never remitted the $5.00 filing fee, and FmHA subsequently debited the Bucks' FmHA account $5.00 on December 31, 1985.

The $5.00 was apparently intended to cover the filing cost of a continuation statement in Logan County, which was never filed. After the Bucks complained, FmHA promised to remove the charge from their account. When FmHA officials realized the 1980 financing statement had lapsed, they filed a new financing statement in Champaign County on September 2, 1986, which provided:

> This financing statement is signed by secured party only and covers the collateral in which perfected security interest was previously secured by financing statement # 28597 which lapsed on 9/5/85. This collateral is listed on a Security Agreement signed by borrower on May 16, 1984 available at the Bellefontaine FmHA office.

In their original complaint, the plaintiffs charged that during the year in which the financing statement was lapsed "[t]hroughout its correspondence and implicit [in] its dealings" with the Bucks, FmHA represented that it had a perfected security interest in the collateral. They contended that the 1986 financing statement was void because it was filed under the "guise of a Continuation Statement" without notice to the Bucks or a request for their signatures, thereby constituting fraud and misrepresentation. They also charged FmHA with violations of Ohio Rev.Code Ann. § 1309 *et seq.*, the Ohio Uniform Commercial Code. Finally, the Bucks alleged that the filing of the 1986 financing statement was "an unconstitutional encumbering of property without reason."

The original complaint was filed in an Ohio state court in August 1989 and was removed to the district court in September. The complaint named the United States Department of Agriculture, FmHA, and two FmHA officials in Ohio as defendants. The complaint sought a declaratory judgment that the 1980 financing statement had lapsed on August 25, 1985 and that the financing statement filed on September 2, 1986 was void, and an injunction to prevent the defendants from enforcing or attempting to enforce the lapsed financing statement.

Following removal, the district court permitted the plaintiffs to file an amended complaint. The amended complaint repeated the claim of the original complaint as Count I. There followed seventeen additional counts containing a litany of complaints concerning alleged actions and inactions of the defendants that caused the Bucks to suffer financial losses. In addition to the declaratory and injunctive relief prayed for in the original complaint, in the amended complaint the Bucks requested that the court declare void all loans affected by FmHA's allegedly unlawful acts and sought a refund of all amounts paid on the affected loans. Finally the Bucks sought approximately $10,000,000.00 (an aggregate of the itemized damages for each count of the amended complaint) in damages, plus attorney fees and court costs.

The magistrate judge to whom the case was referred for pretrial proceedings held a status conference on November 8, 1990.

After noting that the plaintiffs had not filed the amended complaint until seven months after leave was granted and that no significant discovery had taken place, the magistrate set a probable trial date. The magistrate also found that the amended complaint did not contain "a short and plain statement" of the grounds for the court's subject matter jurisdiction as required by Fed.R.Civ.P. 8(a). Plaintiffs' counsel was ordered to file the required statement by November 15, 1990. In addition, the magistrate ordered the attorneys to file statements outlining all anticipated discovery, with scheduling orders, by November 26, 1990.

### B.

Both parties filed the required discovery documents on November 26, and the defendants also filed an answer on that date. In addition to responding to 141 paragraphs of the amended complaint, the defendants asked that it be dismissed for failure to state a claim, lack of subject matter jurisdiction, immunity of the FmHA, failure to exhaust administrative remedies, and the bar of the applicable statute of limitations.

The plaintiffs' attorney contacted counsel for the defendants and asked for an extension of time to file the required jurisdictional statement, and the defendants' attorney agreed to a ten-day extension. Plaintiffs' attorney failed to file a motion or any entry regarding this extension, and he did not file the jurisdictional statement within the extended time. On November 28, 1990, the defendants filed a motion to dismiss the action or, in the alternative, to strike the amended complaint. On December 4 the magistrate ordered the plaintiffs to show cause within ten days why the action should not be dismissed for the plaintiffs' failure to comply with the order to file the previously ordered statement of the court's jurisdiction. When the plaintiffs failed to respond to the show cause order, the district judge signed and entered an order of dismissal. The judgment dismissing the action was filed on January 7, 1991. Seven weeks later, on February 26, 1991, the plaintiffs filed a motion for relief from judgment relying on "excusable neglect" under Rule 60(b), and requested a hearing.

The plaintiffs' attorney filed an affidavit with the motion. He acknowledged that he was aware of the deadline for the jurisdictional statement, but claimed that he was unable to file an entry regarding the ten-day extension because of a sudden, severe illness. He stated that he was precluded from working "under medical order" until January 5, 1991. The affidavit also stated that the affiant had moved his office, and had never received a copy of the dismissal, but had learned of it from the defendants' attorney. The affiant claimed to have informed the court of his change of address. In the motion, the attorney stated that other affidavits would be filed, but no additional affidavits appeared.

### C.

District Judge Graham denied the Bucks' motion for relief and denied their request for an oral hearing. In his order Judge Graham found that the Bucks' argument that their counsel's failure to comply with the magistrate's orders was the result of excusable neglect or inadvertence was unpersuasive because: counsel was present at the status conference when the magistrate ordered him to submit a short jurisdictional statement; counsel never filed a motion with the court stating that he was ill and that he needed an extension of time; counsel never filed written notice informing the clerk of his address change; and the defendants' service of their "Motion to Dismiss/Strike Pleading" on the plaintiffs' attorney at his proper business address provided adequate notice that the Bucks' case was in jeopardy. The district court added that counsel's filing of the "Plaintiffs' Statement of Deposition Discovery Upon Oral Examination" eleven days after the jurisdictional statement was due indicated that he was not completely incapacitated and observed: "[i]f he was going to prepare and file a document, it should have been the jurisdictional statement, not a discovery document." The court noted that counsel had still not filed the required jurisdictional statement as of May 29, 1991,

when the order denying relief from judgment was entered.

The district court then applied the three-part test adopted by this court in *United Coin Meter v. Seaboard Coastline Railroad,* 705 F.2d 839, 845 (6th Cir.1983) to determine whether granting the plaintiffs' Fed.R.Civ.P. 60(b) motion would be proper. The court noted that the only prejudice to the defendants if the plaintiffs' motion were granted would be a delay in the trial, a hardship that "in itself would not be sufficient to justify a denial of the motion." The court then found, however, that the dismissal of the Bucks' case resulted from culpable conduct on the part of their counsel and noted "[p]arties who choose their attorneys as their representatives must suffer the consequences of acts or omissions of their freely selected agents," citing *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). The district court also found, without extensive discussion, that the plaintiffs had failed to show they had presented a meritorious claim.

## II.

The appellant, Charles E. Buck, argues that the district court erred in holding that his attorney's sudden illness did not satisfy the "excusable neglect" provision of Rule 60(b).[2] He contends that this holding, and denial of Buck's request for an oral hearing, constituted an abuse of discretion. Buck also appears to argue that he was not required to file a jurisdictional statement because the defendants' decision to remove the case to federal court established subject matter jurisdiction. So far as the record discloses, this contention was never made before the magistrate or the district judge. Rather than contesting the need for a jurisdictional statement, Buck's counsel conceded that he was aware of the magistrate's order that such a statement be filed and of the date that filing was

required, but asserted that his sudden illness prevented his filing it.

Actually, the amended complaint, filed following removal, contained new claims that raised subject matter jurisdiction questions that were quite different from any raised by the original complaint. The plaintiffs' attorney stated in his motion that an amended complaint was necessary because the original complaint stated a cause of action under state law only. The magistrate's order requiring a Rule 8(c) statement referred to the amended complaint. Of course, the defendants' removal of the action did not concede that the district court had subject matter jurisdiction to decide the plaintiffs' claims; it merely asserted that the case was removable pursuant to 28 U.S.C. § 1346(a), (b) and § 1446 because of the status of the defendants as federal entities and their employees. The issue of subject matter jurisdiction remained for the district court to decide.

The defendants maintain that the district court acted well within its discretion in denying the plaintiffs' motion for relief. Echoing the reasons given by the district court, they argue that the plaintiffs' counsel informed neither the court nor opposing counsel of the duration of the "sudden, serious" illness and never notified the court in writing of his change of business address.

The motion to dismiss was not filed until 14 days after the jurisdictional statement was due. The plaintiffs' attorney admitted receiving a copy of the motion. The order dismissing the case was entered on January 7, 1991, five weeks after entry of the show cause order. When the plaintiffs' attorney indicated to counsel for the defendants on January 10, 1991, that he had not received a copy of the order of dismissal, the defendants' counsel "faxed" a copy to him. Nevertheless, the plaintiffs' counsel waited another seven weeks before filing the Rule 60(b) motion for relief. Even

---

**2.** FED.R.CIV.P. 60(b) provides in part:
   On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from final judgment, order, or

proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . .

then, no jurisdictional statement was forthcoming.

The defendants acknowledge that the plaintiffs' counsel's wife informed their attorney by telephone on December 11, 1990, that her husband was ill. On this basis, counsel for the defendants agreed to postpone taking the depositions of the plaintiffs, which were scheduled for the following day. Neither the plaintiffs' attorney nor anyone acting for him ever advised opposing counsel or the court of the nature or extent of the lawyer's illness. At no time did the plaintiffs' attorney file a physician's statement or hospital record with the court. And, as has been noted, during the very period in which the jurisdictional statement was due, counsel filed a discovery statement, negating any claim that he was too ill to comply with the magistrate's order.

Buck responds to these arguments by contending that he would have been able to satisfy the court that this neglect was excusable rather than culpable if he had been granted an oral hearing on the motion for relief. As to the fact that he filed the discovery document on November 26, eleven days after the jurisdictional statement was due, counsel states that an associate filed that document, but was not sufficiently acquainted with the entire case to prepare the statement of subject matter jurisdiction.

### III.

#### A.

The district court applied the three-part test adopted by the court in *United Coin Meter v. Seaboard Coastline Railroad*, 705 F.2d 839 (6th Cir.1983), in determining to deny the Rule 60(b) motion. *United Coin* listed the following three factors that should be considered by a court requested to set aside a default or a default judgment:

1. whether the plaintiff will be prejudiced;

2. whether the defendant has a meritorious defense; and

3. whether culpable conduct of the defendant led to the default.

*Id.* at 845. The district court applied these tests in the present case upon concluding that a Rule 60(b) motion to set aside a judgment of dismissal for failure to prosecute presents an "analogous situation" to such a motion to set aside a default or a default judgment. The two situations are analogous in that in one case the defendant has failed to comply with the requirements of Fed.R.Civ.P. 12(a) that an answer or motion be served within twenty days and in the other that the plaintiff has failed to comply with a court order that the court be furnished with a statement of the grounds of its jurisdiction as required by Rule 8(c).

There are differences in the two situations, however, and the *United Coin* construct is not followed precisely in cases of dismissal for failure to prosecute. A default occurs at the very beginning of a case. Because courts favor trials on the merits, *id.* at 846, special care is taken to make certain that a party with a meritorious defense is not deprived of an adjudication because of counsel's failure to file a timely response. Without an inquiry into the merits of any available defense, the court would run the risk of cutting short an action that in all justice should be permitted to proceed in the absence of flagrantly egregious conduct by counsel. In a case such as the present one, however, the plaintiff has set forth his claims in a pleading from which the trial court may determine on the face of the record whether the plaintiff has presented a meritorious claim for relief. In a typical case of dismissal for want of prosecution, the case has proceeded beyond the initial pleading stage and the issues have been joined, and there is less risk of dismissal being based upon an unstated meritorious claim or defense. Thus, in such cases we do not make a separate inquiry as to the existence of a meritorious claim.

Clearly analogous to the present case are those in which a party fails to comply with a district court's order requiring particular steps to be taken within a stated time. In *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir.1980), we stated:

The dismissal of an action for an attorney's failure to comply is a harsh sanction which the court should order only in extreme situations showing "a clear record of delay or contumacious conduct by the plaintiff." *Silas v. Sears, Roebuck & Co., Inc.*, 586 F.2d 382, 385 (5th Cir.1978). See *Edsall v. Penn Central Transp. Co.*, 479 F.2d 33 (6th Cir.1973) (per curiam). Absent this showing, an order of dismissal is an abuse of discretion; the court is limited to lesser sanctions designed to achieve compliance, 586 F.2d at 385. The sanction of dismissal is appropriate only if the attorney's dilatory actions amounted to failure to prosecute and no alternative sanction would protect the integrity of pre-trial procedures. *J.F. Edwards Const. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318 (7th Cir.1976) (per curiam).

Though not without dissent, panels of this court have continued to apply the *Carter* formula in cases where a party's attorney fails to appear for a conference or proceeding, or fails to comply with an order. See *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir.1986); *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir.1988), and cases cited therein.

The Supreme Court has clearly held that a district court may dismiss a case for failure to prosecute, either on its own motion, or on motion of a party pursuant to Fed.R.Civ.P. 41(b). *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). In response to an argument that a party should not be required to suffer for an attorney's derelictions, Justice Harlan wrote in *Link:*

> There is certainly no merit to the contention that dismissal of the petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

*Id.* at 633–34, 82 S.Ct. at 1390.

Despite the Supreme Court's unequivocal language, this court, like many others, has been extremely reluctant to uphold the dismissal of a case or the entering of a default judgment merely to discipline an errant attorney because such a sanction deprives the client of his day in court. *Shepard Claims Service v. William Darrah & Associates*, 796 F.2d 190, 195 (6th Cir.1986). The *Shepard Claims Service* court explained:

> [t]o be treated as culpable, the conduct of a [movant] must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings.

*Id.* at 194. Hence, misunderstandings between the parties' counsel or diligent, timely efforts to have a case reinstated have often led this court to reverse dismissals or default judgments. *E.g., Fuller v. Quire*, 916 F.2d 358 (6th Cir.1990) (new counsel's diligent efforts on client's behalf merit the reinstatement of a case despite original counsel's culpable behavior); *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988) ("in the absence of notice that dismissal is contemplated a district court should impose a penalty short of dismissal unless the derelict party has engaged in 'bad faith or contumacious conduct' ").

### B.

■ There are few factors present in this case that militate in favor of reversing the district court's denial of relief under Rule 60(b). Although counsel for the plaintiffs sought to have his failure to comply with the district court's order excused because of his "sudden, serious" illness, he never provided the court with details of that illness. Although he stated in his motion to set aside the dismissal that he would provide additional affidavits, he failed to do so. This is not a case where the district court immediately dismissed a case for failure to comply with a single court order. See *Bishop v. Cross*, 790 F.2d 38 (6th Cir.1986); or where the plaintiff's circumstances made compliance with an order impossible, see *Holt v. Pitts*, 619 F.2d 558 (6th Cir.1980). Rather, it is a case where counsel acknowledged that he understood the court's order, caused other documents to be filed in the case, never ad-

vised the clerk of his change of business address, and did nothing in response to opposing counsel's motion to dismiss.

In his affidavit, the plaintiffs' attorney stated that two days after entry of the January 7, 1991, judgment dismissing the case, he discussed the matter with Judge Graham's law clerk, who advised him that the case had not been dismissed and that a one-week extension of time to file a response to the motion to dismiss and the jurisdictional statement was acceptable to the judge if defendants' counsel approved. The record contains no indication that the plaintiffs' attorney ever attempted to obtain approval of this further one-week extension. In fact, the next filing on behalf of the plaintiffs was the February 26 motion for Rule 60(b) relief.

Some of our cases indicate that when either derelict counsel or new counsel moves quickly to cure the delinquency this court is more likely to give the non-complying party another chance, even when no excusable neglect is found. *E.g., Fuller v. Quire,* supra. In such a case prejudice to the other party is minimal and the court's management of its docket is not seriously affected. No such mitigating factor exists in this case. Not only did counsel not move promptly to cure the delinquency, seven weeks after entry of the judgment, when he filed his Rule 60(b) motion, he still had not filed and did not tender the jurisdictional statement. So far as we know, he has not filed it to this day. We agree that the attorney's neglect was culpable, rather than excusable.

Reluctant as we are to penalize a party for his attorney's failings, we cannot find in this case that the district court abused its discretion in denying the Rule 60(b) motion. Buck's argument that the district court's denial of his request for an oral hearing rendered the denial of his Rule 60(b) motion unfair is without merit. Counsel did not tender any proof of facts that would have assisted the district court in exercising its discretion. The promised additional affidavits never appeared, and he offered nothing to indicate that any fact not disclosed by the court's record would lead to a different result than that reached by the district court. Furthermore, neither the local rules of the United States District Court for the Southern District of Ohio nor the Federal Rules of Civil Procedure provides for a hearing on a Rule 60(b) motion. *Cf. Goodpasture v. Tennessee Valley Authority,* 434 F.2d 760, 764 (6th Cir.1970) ("litigants are not entitled as a matter of right to an oral hearing on every motion").

## IV.

Although we find no abuse of discretion in the trial court's dismissal of this case for failure to prosecute, we also conclude that it was subject to dismissal under the defendants' motion to dismiss. Thus, the plaintiffs suffered no prejudice.

Counts II through XVIII sought money damages for FmHA's alleged violations of its own regulations promulgated pursuant to the Consolidated Farm and Rural Development Act (CFRDA). This court held in *Ashbrook v. Block,* 917 F.2d 918 (6th Cir.1990), that a farmer did not have a private right of action against FmHA under CFRDA's general enabling statute, 7 U.S.C. § 1989, or the provisions of the Code of Federal Regulations which that statute engendered. *Id.* at 926. See also *Lundstrum v. Lyng,* 954 F.2d 1142 (6th Cir.1991) (same). In addition to their reliance on alleged failure of FmHA and its officials to follow their own regulations, the plaintiffs in *Ashbrook* and *Lundstrum* also sought damages for claimed breaches of contract and tortious conduct by the defendants. Those claims were similar in many respects to particular claims in Counts II–XVIII of the amended complaint in the present case. We set forth our reasons for upholding the district courts' dismissals in *Ashbrook* and *Lundstrum* and will not repeat that discussion. Suffice it to say that virtually every argument by the appellant Buck in the present case was considered and rejected in the two earlier decisions. For reasons ranging from sovereign immunity to failure to exhaust administrative remedies, we found either that the plaintiffs had failed to state claims

**610**

upon which relief could be granted or that the district court lacked subject matter jurisdiction.

 With respect to the sole claim in the original complaint, repeated as Count I in the amended complaint, even assuming the district court had subject matter jurisdiction, we find that it failed to state a claim upon which relief may be granted. Buck appears to claim that he suffered injury because the 1986 financing statement filed by FmHA did not satisfy the Uniform Commercial Code's requirements for a "continuation statement." Ohio Rev.Code Ann. § 1309.40(C). The defendants agree that the document did not serve as a continuation statement. The Code also provides, however, that a financing statement signed by the secured party instead of the debtor is sufficient if filed to perfect a security interest in collateral as to which a previously filed statement has lapsed. *Id.* at § 1309.39(B)(3). Thus, the September 1986 financing statement reinstated FmHA's security interest in the Buck collateral.

As we see it, FmHA was at risk for about one year that some other creditor would perfect a security interest in the collateral while the original financing statement was lapsed. We can find no harm to Buck from these circumstances, however; he and his co-plaintiffs were still indebted to FmHA and the collateral remained pledged to secure the indebtedness. The only significance by the failure to file a continuation statement was that for approximately one year FmHA held an unperfected security interest. The plaintiffs were not entitled to a declaratory judgment that the 1986 financing statement was void or to an injunction prohibiting FmHA from enforcing it. The claim that somehow FmHA's actions "unconstitutionally encumber[ed]" the plaintiffs' private property was totally without merit and subject to dismissal for failure to state a claim.

The judgment of the district court is affirmed.

KENNEDY, Circuit Judge, concurring.

I concur in the result reached by the panel. This Court reviews a denial of a Fed.R.Civ.P. 60(b) motion under an abuse of discretion standard. *Amernational Industries, Inc. v. Action–Tungsram, Inc.,* 925 F.2d 970, 975 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2857, 115 L.Ed.2d 1024 (1991). The decision to set aside a judgment is controlled by three factors: 1) whether defendant will be prejudiced; 2) whether plaintiff has a meritorious claim; and 3) whether plaintiff's culpable conduct led to the dismissal. *Id.* at 976.

Under this Court's decisions in *Ashbrook v. Block,* 917 F.2d 918 (6th Cir.1990) and *Lundstrum v. Lyng,* 954 F.2d 1142 (6th Cir.1991), plaintiffs in this case cannot demonstrate that they have a meritorious claim. The District Court does not have subject matter jurisdiction over these claims. For this reason, the District Court did not abuse its discretion in denying the Rule 60(b) motion, and it would be futile to send this case back to the District Court to be heard on the merits.