107 F.3d 870
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John James BRADBURY; Nancy Herc-Bradbury, Plaintiffs-Appellants,
v.
TOWNSHIP OF PLYMOUTH, Police Chief Barry; Police Sergeant
Smith; John Doe Police Officers I-IV,
Individually and Severally, Defendants-Appellees.
 No. 94-2232.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1997.
 
 Before: WELLFORD, RYAN, and SILER, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 John James Bradbury and Nancy Herc-Bradbury filed this action alleging various civil rights and state tort violations in connection with an alleged assault and detention. The district court dismissed the Bradburys' complaint for failure to obey orders of the court and to cooperate in discovery. Finding no abuse of discretion, we affirm.
 
 I.
 
 2
 On August 25, 1993, the Bradburys filed a complaint against the defendants in state court. Neither the specific claims set forth in the complaint nor the facts giving rise to the complaint are important to this appeal. The defendants mailed interrogatories to the Bradburys on September 24, 1993. Three days later, the defendants properly removed the case to federal court. On November 8, 1993, the district court issued a scheduling order for the case and, on November 19, 1993, the Bradburys responded to the defendants' initial interrogatories.
 
 
 3
 On March 4, 1994, the defendants filed a Motion to Compel Answers to Interrogatories and to Extend Discovery. In that motion, the defendants noted that the Bradburys had failed, in their November 19, 1993 answers, to provide addresses and phone numbers for their witnesses. The motion also reported that the defendants had "repeatedly contacted Plaintiffs' counsel's office" in an attempt to complete discovery and that "[b]ecause of Plaintiffs' counsel's refusal to cooperate in discovery, Defendants have been prejudiced, and Defendants will not complete discovery by the discovery cut off." The defendants requested an order to compel answers, an order to cooperate in setting deposition dates, an extension of the discovery period, and an award of costs and fees attributable to the motion. On March 9, 1994, the district court amended the pretrial schedule and established June 17, 1994 as the new deadline for discovery.
 
 
 4
 On March 11, 1994, the district court referred the defendants' Motion to Compel Answers to Interrogatories to the consideration of a magistrate judge. On March 18, 1994, the magistrate judge noticed a hearing on the defendants' motion for April 22, 1994. The notice required that a response to the motion be filed on or before April 4, 1994, and made it clear that "[i]f no response is so filed, the movant shall present an appropriate order on the motion and no hearing will be held." The notice also required the Bradburys to meet with the defendants to prepare a "list of unresolved issues" to be submitted by April 11, 1994. On April 26, 1994, the magistrate judge issued an Order Granting Defendants' Motion to Compel because there had been "no response to [defendants'] motion within the time period ordered by the court." By this order, the Bradburys were required to "provide answers to defendants' Interrogatories dated September 24, 1993, within 14 days of the date of this Order." The defendants were not, however, awarded costs. The Bradburys did not object to the order, but did not comply with it.
 
 
 5
 On June 7, 1994, with the June 17, 1994 amended discovery date fast approaching, the defendants filed a Motion to Dismiss for Failure to Engage in Discovery. Noting that they would again be unable to complete discovery by the new scheduled cutoff date because of the Bradburys' intransigence, the defendants requested that the court dismiss the Bradburys' complaint pursuant to Fed.R.Civ.P. 37(b). In the alternative, the defendants requested that the court extend the discovery period, compel answers, and "impos[e] sanctions on the Plaintiffs for failure and refusal to abide by the Court's order in answering interrogatories." On June 9, 1994, in response to the defendants' most recent motion, the district court entered an Order Setting Briefing Schedule and Date for Oral Argument. By that order, responses to the defendants' motion to dismiss were to be filed on or before June 20, 1994. The Bradburys were also given until June 27, 1994, to file a reply brief should they so desire. The order made it clear that a failure to file a response by the date specified could lead to an order granting the requested relief. The district court ordered that oral argument on the motion would be heard on July 11, 1994.
 
 
 6
 At the request of the Bradburys' counsel, the July 11, 1994 hearing was adjourned until July 25, 1994. On July 25, 1994, however, neither the Bradburys nor their counsel appeared at the hearing. Moreover, the Bradburys failed to file a written response as ordered by the court. Citing these failures, the district court stated that "[t]he motion to dismiss for failure to comply with the discovery requests is granted for all the reasons that [the defendants] have briefed and presented ... [w]ith prejudice, period." An order to this effect was entered on July 27, 1994.
 
 
 7
 On August 1, 1994, the Bradburys filed a Motion for Relief of Order pursuant to Fed.R.Civ.P. 60(b). The Bradburys argued that they had engaged in discovery, that the defendants' interrogatories had been answered, that the defendants failed to state specifically which interrogatories the Bradburys failed to answer, and that their
 
 
 8
 attorney was in trial at the time that [the motion to dismiss] was heard, thus there does exist excusable neglect for his failure to be present, and notwithstanding same, Attorney Kenneth R. Burch Sr., upon finding out that Attorney Hall was in trial appeared before this Honorable Court in an effort to argue this motion and arrived at approximately 1:50 p.m., after this matter had been heard and attempted to inform the court that Mr. Hall was in trial and that the Plaintiffs had complied with discovery.
 
 
 9
 On August 9, 1994, the court entered an order setting oral argument on the Bradburys' Rule 60(b) motion for September 19, 1994. The order stated that responses to the motion were due on or before August 28, 1994, and that any reply brief was to be filed by September 5, 1994. The defendants filed their response and brief on August 22, 1994.
 
 
 10
 On September 26, 1994, the court heard oral argument on the Bradburys' motion. After listening to statements from both parties' counsel, the district court directed the following to the Bradburys' attorney:
 
 
 11
 [Y]ou're asking for relief from the order apparently because you were in trial, and were busy at the time the Court held hearing on the motion to dismiss.
 
 
 12
 ....
 
 
 13
 ... But you didn't file a response to the motion. You filed no response whatsoever, did not come to the hearing. The Magistrate had entered an order that you give discovery. You haven't provided any affidavit yet to suggest excusable neglect. Your partner or the person from your office came after we had waited and finally entered the order granting dismissal of your case, and we had even adjourned that hearing date at your request. And then you never showed up. And your associate was about an hour after the hearing.
 
 
 14
 I am going to have to--you come and tell me you were busy and all about the wrongdoings of the other side in the discovery, and furthermore that your client is concerned.
 
 
 15
 ....
 
 
 16
 ... The Magistrate had entered an order compelling a response ... and you never responded.
 
 
 17
 ....
 
 
 18
 ... You didn't respond to the motion in my Court either. I am afraid I have to deny the motion. It would be an egregious error to grant it, in view of the other side's rights in this case.
 
 
 19
 On September 26, 1994, the district court entered an order denying the Bradburys' motion for relief. On October 24, 1994, the Bradburys filed this appeal.
 
 II.
 
 20
 On appeal, the Bradburys argue that the district court abused its discretion when it dismissed their complaint pursuant to Rule 37(b). Specifically, the Bradburys argue that they are "completely blameless" and that they should not be "harshly punished for their lawyer's excusable neglect" and "misunderstanding." They further argue that they "did not willfully or in bad faith disobey a discovery order" and that they "reasonably believed that the faxing of the answers to Defendants' Interrogatories on 11/19/93 constituted compliance with the discovery order of the court." Finally, the Bradburys contend that there was no showing that the defendants were prejudiced by the Bradburys' failings during the discovery process. The Bradburys have not argued that the district court abused its discretion when it rejected their motion for relief under Rule 60(b).
 
 
 21
 Subsection (b)(2) of Rule 37 of the Federal Rules of Civil Procedure provides that
 
 
 22
 [i]f a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
 
 
 23
 ....
 
 
 24
 (C) An order ... dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
 
 
 25
 We review a district court's decision to invoke sanctions pursuant to Rule 37 for an abuse of discretion. Regional Refuse Sys. Inc. v. Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir.1988). This court considers four factors when reviewing a district court's dismissal of a complaint pursuant to Rule 37(b)(2)(c): (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) "whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery"; (3) "whether the dismissed party was warned that failure to cooperate could lead to dismissal"; and (4) "whether less drastic sanctions were imposed or considered before dismissal was ordered." Id. at 153-55.
 
 
 26
 With regard to the first factor, this court has stated that "dismissal of an action for an attorney's failure to comply" should only be ordered where there is " 'a clear record of delay or contumacious conduct' " and "the attorney's dilatory actions amounted to failure to prosecute and no alternative sanction would protect the integrity of pre-trial procedures." Carter v. City of Memphis, 636 F.2d 159, 161 (6th Cir.1980) (per curiam ) (citation omitted). Similarly, with regard to the third factor, the court has explained that where a plaintiff has not been given notice that dismissal is contemplated, "a district court should impose a penalty short of dismissal unless the derelict party has engaged in 'bad faith or contumacious conduct.' " Harris v. Callwood, 844 F.2d 1254, 1256 (6th Cir.1988).
 
 
 27
 Finally, with regard to the fourth factor, this court's opinion in Regional Refuse makes it clear that the failure of the district court to make its consideration of lesser sanctions explicit does not require reversal. The court explained that "[w]hile it would be inappropriate to dismiss without considering the severity of this sanction and the availability of lesser sanctions, it is not an abuse of discretion to dismiss, even though other sanctions might be workable, if dismissal is supportable on the facts." Regional Refuse, 842 F.2d at 155. In Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1079 (6th Cir.1990), this court affirmed the district court's entry of default judgment against several defendants, in spite of the district court's failure to manifest its consideration of lesser sanctions, where "the defendants' lack of response to the court's order to compel discovery ... demonstrated the futility of any lesser sanctions."
 
 
 28
 Although the Bradburys have failed to cite a single case from this circuit in support of their argument, we take notice of the fact that "this court, like many others, has been extremely reluctant to uphold the dismissal of a case ... merely to discipline an errant attorney because such a sanction deprives the client of his day in court." Buck v. U.S. Dep't of Agric. Farmers Home Admin., 960 F.2d 603, 608 (6th Cir.1992). While this reluctance has led this court to state that "[d]ismissal is usually inappropriate where the neglect is solely the fault of the attorney," Carter, 636 F.2d at 161 (emphasis added), this court has never held that a district court is without power to dismiss a complaint, as the first and only sanction, solely on the basis of the plaintiff's counsel's neglect. See, e.g., Buck, 960 F.2d at 608-09; Coston v. Detroit Edison Co., 789 F.2d 377, 378-79 (6th Cir.1986) (per curiam ). Indeed, any such rule would conflict with the plain language of Fed.R.Civ.P. 37(b)(2) and the Supreme Court's decision in Link v. Wabash R.R. Co., 370 U.S. 626 (1962).
 
 
 29
 In Link, the Court affirmed a district court's decision to dismiss a complaint, sua sponte, without notice or hearing. Id. at 633. The district court dismissed the action, which had been working its way to trial for close to six years, after the plaintiff's attorney failed to appear at a pretrial conference. Id. at 627. Although the plaintiff's attorney called the court two hours before the hearing to explain that he would be unable to attend because he was preparing a filing with the Indiana Supreme Court, the district court concluded that the attorney had failed to provide a reasonable excuse for his failure to appear. Id. at 627-29. In affirming the judgment of the district court, the Supreme Court stated that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty." Id. at 633. It explained that "[p]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent"; the Court concluded that "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." Id. at 633-34.
 
 
 30
 In Carter, this court considered a district court's dismissal of a complaint, pursuant to Fed.R.Civ.P. 41(b), for failure to complete discovery by the scheduled cutoff date. Carter, 636 F.2d at 160-61. Noting that "[d]ismissal is usually inappropriate where the neglect is solely the fault of the attorney," the court concluded that the district court had abused its discretion. Id. at 161. Explaining its decision, the court noted that "[t]he plaintiff is blameless[,] ... [t]here is no finding or evidence that defendant was prejudiced[,] ... [d]efendant did not move for dismissal[,] ... [and] [b]oth attorneys seem equally dilatory." Id.
 
 
 31
 In contrast, the court in Coston affirmed a district court's decision to dismiss a complaint after the plaintiff's attorney failed to appear at a hearing on the defendant's motion for summary judgment and, subsequently, twice "failed to appear at scheduled pretrial conferences before the magistrate, to whom the matter was referred, despite the court's order requiring him to be present on the latter occasion." Coston, 789 F.2d at 378. The court distinguished Carter, writing:
 
 
 32
 The plaintiff's problem here was his chosen attorney's failure to appear on repeated occasions under circumstances deemed unacceptable to the court, not mere dilatory conduct involving a failure to file a specified document. We find no abuse of discretion in either the magistrate's or the district court's treatment of this case. See Link [, 370 U.S. 626], where the test is stated to be whether the action "was within the permissible range of the court's discretion."
 
 
 33
 Id. at 379. The court concluded that the district court had not abused its discretion in dismissing the action because "[t]he facts of this case, in our view, more nearly resemble those in Link than those in Carter." Id. In light of the delinquent attorney's performance before the lower court and his further failure to appear at oral argument on appeal, this court imposed costs and suspended the attorney from practice before the court pending payment. Id.
 
 
 34
 After careful review of the facts of this case, we are satisfied that the district court did not abuse its discretion when it dismissed the Bradburys' complaint. This case more closely resembles Link and Coston than it does the line of decisions following Carter. We note, for example, that in Carter, 636 F.2d 161, there was no finding of prejudice to the defendant who had been "equally dilatory"; in Little v. Yeutter, 984 F.2d 160, 163 (6th Cir.1993), this court found "no evidence which shows that [the plaintiff] failed to adhere to any pre-trial orders or that he failed or would have failed to appear at the pre-trial conference or the trial"; in Vinci v. Consolidated Rail Corporation, 927 F.2d 287, 288 (6th Cir.1991), this court found that the plaintiff had not been given a meaningful warning that dismissal was contemplated and that the defendant had not been prejudiced; and in Patterson v. Township of Grand Blanc, 760 F.2d 686, 688 (6th Cir.1985) (emphasis added), this court concluded that "lack of compliance with all of [the district court's] orders within five days falls short of establishing a basis for final dismissal." None of these factors, critical to these decisions, is present in this case.
 
 
 35
 To the contrary, the record clearly details a pattern of contumacious neglect. The Bradburys failed to properly answer the defendants' interrogatories, failed to respond to the defendants' motion to compel, failed to comply with the district court's order to compel, failed to respond to the defendants' motion to dismiss, and, finally, failed to appear at the dismissal hearing which had been rescheduled to accommodate the Bradburys' counsel. The Bradburys have argued that their attorney's failure to appear was "excusable neglect" because he "was in trial at the time that this matter was heard." A similar argument was found inadequate in Link and it is sufficient to say that the Bradburys fail to appreciate the meaningful distinction between an explanation and an excuse. Furthermore, neither the Bradburys nor their attorney has explained, let alone excused, their failure to file responses to the defendants' motions. Finally, in light of the defendants' motion to compel, the district court's order to compel, and the defendants' motion to dismiss, we find preposterous the Bradburys' contention that their counsel was under the excusably "mistaken belief" that he had satisfactorily answered the defendants' interrogatories.
 
 
 36
 There can be no argument that the Bradburys were without notice that the district court was contemplating the dismissal of their complaint. The defendants filed a motion to dismiss and the district court warned the Bradburys that failure to file a response could result in a grant of the defendants' motion. That the defendants were prejudiced by the Bradburys' lack of cooperation is also free from doubt. Not only were the defendants unable to secure the information requested and unable to comply with the court's discovery deadlines, they were also forced to waste considerable time, money, and effort in the futile pursuit of cooperation which the Bradburys were legally obligated to provide. Finally, although the district court did not explicitly state that it had considered lesser sanctions, it did state that "[t]he motion to dismiss for failure to comply with the discovery requests is granted for all the reasons that [the defendants] have briefed and presented." In light of the fact that the defendants' motion contained alternative requests to extend discovery, compel answers, and award costs and fees, we are satisfied that the district court considered and rejected these lesser alternatives.
 
 
 37
 Furthermore, we are convinced, given the record of contumacy before us, that lesser sanctions would have been inadequate to prevent further prejudice to the defendants and further insult to the integrity of pretrial procedures. For all the reasons stated, then, we conclude that the district court did not abuse its discretion when it dismissed the Bradburys' complaint.
 
 III.
 
 38
 The judgment of the district court is AFFIRMED.
 
 WELLFORD, Circuit Judge, dissenting:
 
 39
 While I do not doubt a district court's power or authority to dismiss a case for discovery violations, I do feel that it was an abuse of discretion under the circumstances to impose such an extreme sanction, especially since there is no indication that any other lesser, but still effective, remedies were at least considered by the district court. Accordingly, I respectfully DISSENT.
 
 
 40
 In Freeland v. Amigo, --- F.3d ----, No. 95-4195, 1997 WL 7281 (6th Cir. Jan. 10, 1997), we just recently reaffirmed this court's general longstanding reluctance to approve the drastic sanction of dismissal. As we made clear in Buck v. U.S. Dept. of Agriculture, 960 F.2d 603, 608 (6th Cir.1992), we are very hesitant to visit the sins of the attorney on a blameless client "because such a sanction deprives the client of his day in court." See also Coleman v. American Red Cross, 23 F.3d 1091, 1094-95 (6th Cir.1994) ("this court ... has been extremely reluctant to uphold the dismissal of a case merely to discipline an attorney"); Vinci v. Consol. Rail Corporation, 927 F.2d 287, 287-88 (6th Cir.1991) (dismissal usually inappropriate where the neglect is the sole fault of the attorney); Patterson v. Township of Grand Blanc, 760 F.2d 686, 688 (6th Cir.1985) (same); Carter v. City of Memphis, 636 F.2d 159, 161 (6th Cir.1980) (reversing a dismissal under Rule 41(b) because, while plaintiff's counsel had been inept, the plaintiff was blameless).
 
 
 41
 By contrast, however, our court has shown no hesitancy to allow dismissal if the litigant himself is at fault. In Regional Refuse Systems, Inc. v. Inland Reclamation, 842 F.2d 150, 155 (6th Cir.1988), for example, we affirmed a sanction of dismissal in part because the "[plaintiff] himself ... engaged in conduct that can only be characterized as outrageous and beyond the realm of which the other parties in the action and their counsel should be made to tolerate." (internal quotes omitted). There is absolutely no indication in this case, however, that the plaintiffs even had knowledge of their attorney's shortcomings, much less participated in them. The district court made no finding that the plaintiffs themselves were to blame or were guilty of bad faith or disregard of rules or orders of the court. Further, the defendants make no effort to make such a showing or to argue this point in their brief. In fact, there is no reference whatsoever to contumacious conduct by the plaintiffs.
 
 
 42
 Notwithstanding the foregoing, I do not mean to suggest that our court has been altogether unwilling to allow a sanction of dismissal to stand absent direct participation by a client in his attorney's misconduct. To the contrary, as the majority correctly points out, such a position would be inconsistent with the very text of Rule 37(b)(2) of the Federal Rules of Civil Procedure as well as contravene our precedent in cases like Coston v. Detroit Edison, 789 F.2d 377 (6th Cir.1986), cited by the majority. In addition, I am quite mindful of the Supreme Court's opinion in National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642-43 (1976), which states that as the most severe sanction, dismissal "must be available to the District Court[s] in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct...." Nevertheless, as Judge Ryan himself wrote in Regional Refuse, "[t]he Sixth Circuit ... has not always been as reluctant to reverse dismissals as this rationale would suggest." 842 F.2d at 154. Instead, we have consistently made clear that we reserve such treatment for circumstances involving blatant bad faith, lengthy delay, serious prejudice, or contumacious conduct. See, e.g., id. at 155 ("Dismissal is generally imposed only for egregious misconduct....").
 
 
 43
 The majority purports to acknowledge the authority of these cases, but in my opinion, they have failed in their attempt to apply it to these facts. As support for their holding, the majority relies primarily on two cases--the Supreme Court's opinion in Link v. Wabash Railroad Co., 370 U.S. 626 (1962), and our court's decision in Coston, 789 F.2d at 377. Quoting heavily from Link, the majority states that:
 
 
 44
 In affirming the judgment of the district court, the Supreme Court stated that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty." Id. at 633. It explained that "[p]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent"; the Court concluded that "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." Id. at 633-34.
 
 
 45
 Supra at ----. As noted above, I do not disagree with this notion that courts ultimately have the power to impose the sanction of dismissal. However, in light of our subsequent cases, it is clear that Link cannot be understood to grant judges carte blanche discretion to ignore basic considerations of fairness, as the above quoted passages might suggest when taken out of context. Instead, looking at Link in its entirety, the case merely stands for the idea that it was within the inherent power of the district court to dismiss the oldest case on the docket in light of extreme circumstances. Id. at 629. The Link case was six years old when involuntarily dismissed, following a period of nine months when plaintiff's counsel had failed to file any answer to defendant's interrogatories. The Court observed that "petitioner had been deliberately proceeding in dilatory fashion" and also that plaintiff's counsel had failed to appear at a scheduled pretrial conference without any reasonable excuse. Id. at 634.[1]
 
 
 46
 Based on the record before us, the facts in the instant case are a far cry from those in Link. The dismissal here occurred about one year after the case was filed, and while the plaintiffs' responses to the defendant's interrogatories were technically insufficient, they were in substantial compliance inasmuch as most of the requested information was furnished within two months of the filing of interrogatories. In addition, the plaintiff also made himself available for a deposition. It is indeed interesting to note that the district court did not indicate any "bad faith" on the part of the plaintiffs or even their attorney, nor was there a finding of prejudice to defendants. Likewise, in their brief, the defendants have failed to claim that they indeed suffered any prejudice.
 
 
 47
 In Link, moreover, the majority noted particularly that plaintiff had not sought "the availability of a corrective remedy such as is provided by Federal Rules of Civil Procedure 60(b)," id. at 632, leading the court to observe that:
 
 
 48
 Nor need we consider whether the District Court would have been abusing its discretion had it rejected a motion under Rule 60(b) which was accompanied by a more adequate explanation for the absence of petitioner's counsel from the pretrial conference. No such motion was ever made, so that there is nothing in the record before us to indicate that counsel's failure to attend the pretrial conference was other that deliberate....
 
 
 49
 Link, 370 U.S. at 635, 636. Similarly, our decision in Buck also implies that it is important in these cases to consider whether counsel has promptly moved to have the case reinstated with institution of a lesser penalty, stating that "timely efforts to have a case reinstated have often led this court to reverse dismissals or default judgments." 960 F.2d at 608. In this case, of course, the plaintiffs expressly sought such remedy, asserting several grounds for relief including an averment that it had faxed additional answers to interrogatories to defendant some months earlier.
 
 
 50
 As for the majority's reliance on Coston, as one of the judges who participated in that per curiam decision, I must respectfully disagree with their conclusion that it supports the holding here. Coston involved unjustified actions by counsel over a number of years on "repeated occasions ... not mere failure to file a specified document." 789 F.2d at 379. In addition, on appeal, that same attorney again failed to appear without adequate reason. Such a pattern of conduct ultimately warranted monetary sanctions and even suspension. The attorney's conduct in the instant case hardly rises to this level. In my opinion, it much closer to the facts of those cases that have prompted our court to reverse dismissal.
 
 
 51
 What is troubling to me is that the district court apparently failed even to consider lesser sanctions or explain on the record why it found it necessary to utilize the penalty of dismissal as a first, and ultimately final, alternative. This course might have caused the district court to pause before adopting such an extreme sanction, and it would have provided us with a more well-developed record for review. Judge Ryan himself noted in Regional Refuse that under normal circumstances "it would be inappropriate [for a district court] to dismiss without considering the severity of this sanction and the availability of lesser sanctions." Id. at 155.
 
 
 52
 Accordingly, I would REVERSE and REMAND to the district court to exercise her discretion to punish or sanction plaintiffs' counsel after appropriately considering and explaining that lesser sanctions than dismissal are not sufficient under the circumstances.
 
 
 
 [1]
 There was a vigorous, lengthy dissent in Link, a four-to-three decision indicating a divided Court, on the propriety of dismissal in that case