NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0880n.06
Filed: December 27, 2007

No. 06-2264

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **CHARLES KEMP**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **MARCUS ROBINSON; DAN GIBLER**, | ) | **O P I N I O N** |
| | ) | |
| *Defendants-Appellees*. | ) | |

BEFORE:     DAUGHTREY and COLE, Circuit Judges; COLLIER, District Judge.[*]

        **R. GUY COLE, JR., Circuit Judge.**  Plaintiff-Appellant Charles Kemp, an inmate at the

State Prison of Southern Michigan in Jackson, sued multiple defendants in the United States District

Court for the Eastern District of Michigan under 42 U.S.C. § 1983 for an alleged assault by two

prison guards.  The clerk of the court entered defaults for two of the defendants, Marcus Robinson

and Dan Gibler, who failed to appear or answer Kemp's complaint.  When Kemp did not file a

motion for default judgments after nearly three years, the district court issued an order dismissing

the case against Robinson and Gibler for Kemp's failure to prosecute.  On appeal, Kemp now

requests this Court to reinstate the claims, and remand the case to the district court so that he may

file a motion for default judgment against Robinson and Gibler.  For the reasons set forth below, we

---

        [*] The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern
District of Tennessee, sitting by designation.

**REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Charles Kemp alleges that on November 23, 2003, he was assaulted by two prison guards, Raytheon McClure and Defendant-Appellee Marcus Robinson. Afterwards, Kemp reported the incident to Defendant-Appellee Dan Gibler, the supervisory shift sergeant that night, and Cathy Mars, a registered nurse at the Southern Michigan prison, but no immediate action was taken.

Kemp then filed a prisoner grievance form as to these allegations with the Michigan Department of Corrections ("MDOC"), which was received on November 30, 2000. The MDOC conducted a formal investigation and concluded that McClure and Robinson had conspired in a premeditated fashion to inflict bodily harm and fear on Kemp in an attempt to make him comply with prison rules. As such, the MDOC charged McClure and Robinson with the excessive use of force in violation of prison regulations.

After the investigation and internal disciplinary proceedings, on November 19, 2002, Kemp brought this action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Michigan, naming Warden Harold White, Robinson, McClure, Gibler, and Mars as defendants. His complaint alleges that (1) Officers Robinson and McClure used excessive and unreasonable force, which violated Kemp's Eighth Amendment right to be free from cruel and unusual punishment; (2) Sergeant Gibler and Nurse Mars were deliberately indifferent to Kemp's serious medical needs; (3) Warden White, individually and in his official capacity, maintained a policy, practice, or custom that was the direct or proximate cause of Kemp's constitutional

deprivations; and (4) defendants committed various state law torts, including assault, battery, intentional infliction of emotional distress, gross negligence, and caused the loss of consortium.

On August 28, 2003, the district court adopted a report and recommendation from Magistrate Judge Virginia M. Morgan to grant Warden White's motion to dismiss. Shortly thereafter, on November 14, 2003, the clerk entered defaults as to Robinson and Gibler, neither of whom had appeared or answered after being served with a summons and a copy of Kemp's complaint.

Kemp began settlement negotiations with the remaining defendants, McClure and Mars, which culminated in a final pretrial conference on September 1, 2005, where the parties tentatively agreed to a monetary settlement in exchange for release of the claims. Although Kemp agreed to the monetary amounts discussed in the conference, he maintains that the proposed partial settlement left two issues unresolved: (1) the exceptions to Kemp's release of claims against Mars and (2) the payment schedule from McClure. Over the next few months, Kemp's attorney, Stephen Drew, avers that he continued to work toward a final, binding agreement with Mars and McClure.

On January 12, 2006, LaShawn Saulsberry, the case manager the district judge assigned to the case, contacted Drew to inquire about the status of the final settlement agreement, which had yet to be submitted to the district court for approval. According to an affidavit from Drew, he was unavailable at the time of the call, but had Ann Cooper, another attorney at the law firm, inform the court that the delay was due to McClure's attorney's failure to confirm a payment schedule for the settlement, which was one of the unresolved issues in the final settlement conference.

Drew continued to work toward a final settlement with both Mars and McClure. To that end, he contacted Mars's attorney on February 6, 2006, and McClure's attorney on January 26, 2006,

3

January 31, 2006, and February 6, 2006, by telephone and written correspondence. Though Drew was able to work out the details with Mars shortly after Saulsberry contacted him, Drew submits in his affidavit that he never heard from McClure or McClure's attorney. On February 23, 2006, Drew informed the district court of his progress, including the fact that McClure had yet to respond to any settlement request.

It is worth noting that while Drew's affidavit only mentions these two interactions with the district court, the record indicates that the case manager called Drew multiple times over a period of six months, requesting submission of the final settlement documents so that the case could be dismissed. Because of the lengthy delays, on March 16, 2006, the district court issued an Order of Dismissal, indicating that the case was dismissed because the matter had been settled among the parties at the final pretrial conference; that the parties had been directed to prepare and submit an order of dismissal for entry by the court; and that, because no action was taken by the parties, the case should be dismissed with prejudice. Eight days later, Kemp filed a motion to set aside the dismissal order, and to set a date for a hearing to seek default judgments and to put the final settlements on the record.

Before the hearing on Kemp's motion could take place, McClure's attorney mailed a settlement check to Drew, effectively resolving the claims against McClure. Thus, Kemp requested the district court to reinstate the case for the purpose of entering a final settlement on the record for McClure and Mars, both of whom had already settled with Kemp, and also to reinstate the case against the two defaulting defendants, Robinson and Gibler. At the hearing on Kemp's motion to set aside the Order of Dismissal, the district court agreed to reinstate the case for the purpose of entering the settlements

4

with McClure and Mars, but denied the motion to reinstate with regard to the remaining two defendants, Robinson and Gibler. With respect to the defaulting defendants, the court explained its justification in the following exchange:

> THE COURT: What was the problem with filing a motion for default judgment in December of 2003 any day in the State in 2004, and any time up to November of 2005?
>
> MS. COOPER: I don't think I can explain to you what the problem was. I think we were trying to resolve what we could and then keep going on what we hadn't been able to resolve.
>
> THE COURT: Wouldn't filing a motion for default judgment and getting a default judgment entered have resolved that?
>
> MS. COOPER: Yes. We were ready to file the default judgment when the dismissal came, the application for default judgment.
>
> THE COURT: Which is some two and a half years, almost two and a half years, after the default?
>
> MS. COOPER: That's correct.
>
> THE COURT: Miss Cooper, I'm afraid I can't let you do that. I'll reinstate the case for purposes of the settlement with Mr. White, Mr. McClure and Miss Mars, and we'll enter the settlement, assuming that everybody's agreed to it. We'll put it on the record here today but I can't let you wait two years after a default has been entered by the clerk with no action whatsoever and then another six months before a motion is even filed to set aside, I'm sorry, to enter a default judgment. I'm afraid I can't do that.

After the district court accepted the settlement and dismissed the claims, Kemp then filed a notice of appeal contesting the district court's refusal to hold a hearing and enter default judgments against Robinson and Gibler. Robinson and Gibler have both elected not to participate in this appeal.

## II. ANALYSIS

May the district court dismiss a case against the two defaulting parties, Robinson and Gibler, for dilatory conduct by Kemp's attorney? We hold that, consistent with prior precedent, that the district court may not—Kemp's attorney's actions do not rise to the level of malicious conduct required before a district court may impose its harshest sanction: dismissal of the entire action.

Rule 41(b) of the Federal Rules of Civil Procedure gives courts the authority to dismiss a case for "failure of the plaintiff to prosecute or to comply with these rules or any order of the court." Its local rule counterpart in the United States District Court for the Eastern District of Michigan provides:

> [W]hen it appears that the court lacks subject matter jurisdiction or that the parties have taken no action for a reasonable time, the court may, on its own motion after reasonable notice or on application of a party, enter an order dismissing or remanding the case unless good cause is shown. An application for a continuance or pending discovery may not preclude a dismissal for failure to prosecute.

E.D. Mich. LR 41.2.

Because a district court must be given substantial discretion in the management of its caseload, "[w]e apply the abuse-of-discretion standard when reviewing a district court's decision to dismiss a lawsuit for failure to prosecute." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (citing *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993)). However, "[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Id.* (internal quotations and citation omitted).

What underlies this hesitation to affirm summarily a district court's discretionary decision to dismiss an action are two competing concerns. "On the one hand, there is the court's need to manage

its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims. On the other hand is the policy which favors disposition of cases on their merits." *Little*, 984 F.2d at 162 (citation omitted). Indeed, this Court has been "reluctant to uphold the dismissal of a case . . . merely to discipline an errant attorney because such a sanction deprives the client of his day in court." *Buck v. U.S. Dep't of Agric., Farmers Home Admin.*, 960 F.2d 603, 608 (6th Cir. 1992).

In recognizing those conflicting values, this Court has identified four factors to be considered in the decision of a district court to dismiss a case for failure to prosecute under either Federal Rule of Civil Procedure 41(b) or the local rule counterpart: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). "Although typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363 (citing *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) (per curiam)).

### 1. Willfulness, bad faith, or fault

In *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962), the Supreme Court offered guidance concerning the proper scope of Rule 41(b) dismissals by upholding a district court's dismissal after a plaintiff's attorney failed to appear at a scheduled pretrial conference. The plaintiff's attorney had previously waited nineteen months to respond to the defendant's initial interrogatories, had answered

7

those interrogatories only after being threatened with dismissal, and had responded to further interrogatories only after requesting an extension of time. *Id.* at 635 n.11. In light of these facts, the Court concluded that "it could reasonably be inferred from [the attorney's] absence, as well as from the drawn-out history of the litigation . . . , that petitioner had been deliberately proceeding in a dilatory fashion." *Id.* at 633. Although *Link* remains good law, this Court has expressly distinguished between mere dilatory conduct and bad faith, willfulness, or fault. To fall into the latter category, a plaintiff "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001) (internal quotations and citation omitted) (alteration in original).

While it is apparent from the record that Kemp's attorney, Drew, could have been more diligent in filing the motion for default judgment, especially given that the clerk entered defaults against Robinson and Gibler almost three years prior, there is no evidence that he engaged in a stubborn effort to delay proceedings in court. First, it appears that the Kemp was conscientiously working toward a final settlement. Throughout January and February of 2006, Kemp's attorney repeatedly contacted Mars and McClure to resolve the exceptions to Kemp's release of claims and to establish a payment schedule with McClure. Although there appears to be a delay between the final settlement conference, which occurred on September 1, 2005, and the subsequent agreement on the unresolved claims, opposing counsel's failure to return correspondence was part of the problem. Of course, the fact that Kemp diligently worked toward a settlement does not necessarily explain his failure to move for a default judgment as to Robinson and Gibler. It does, however, show that Kemp did not willfully hold up the proceedings to gain a tactical advantage. While being mindful of the discretion

accorded to district courts in the management of their docket, such delay hardly rises to bad faith or contumacious conduct, which is the level of fault required before a court may dismiss a case in its entirety. *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986) (per curiam) (distinguishing an "attorney's failure to appear on the record on repeated occasions under circumstances not deemed acceptable to the court" from "mere dilatory conduct involving failure to file a specified document"); *see also Carter*, 636 F.2d at 161 (failure to file a proposed pretrial order was not a lapse serious enough to justify dismissal); *but see Harmon*, 110 F.3d at 368 (repeated failures to respond to opposing counsel and the district court establishes that counsel was willfully contemptuous).

Second, the settlement proceedings and the default judgment were not two separate actions, but instead two sides of the same coin. In an action with multiple defendants, there is no rule mandating a plaintiff to pursue a default judgment against some of the defendants before the case is settled with the others. Nor is there a rule mandating a plaintiff to pursue a default judgment as soon as the clerk enters a default. Here, it was perfectly reasonable to negotiate a settlement first, and then subsequently pursue a default judgment.

Finally, "[d]ismissal is usually inappropriate where the neglect is solely the fault of the attorney." *Carter*, 636 F.2d at 161. This court has been "reluctant to uphold the dismissal of a case . . . merely to discipline an errant attorney because such a sanction deprives the client of his day in court." *Buck*, 960 F.2d at 608. After reviewing the record, there does not appear to be any evidence that Kemp sanctioned, authorized, or even had knowledge of his counsel's alleged laggard conduct. As such, the district court erred in dismissing Kemp's case against Robinson and Gibler.

9

*Kemp v. White, et al.*
Case No. 06-2264

## 2. Prejudice

In addition to willfulness, bad faith, or fault, the second factor the court must consider is whether Robinson and Gibler were prejudiced by Kemp's conduct. *Wu*, 420 F.3d at 643. It is without question that this case is qualitatively different from actions which may delay a trial and cause a waste of a defendant's time, money, and effort. Here, because Gibler and Robinson defaulted and have not responded to either the complaint or summons, they could have not have suffered any prejudice as a result of Kemp's delay in filing a motion for default judgment. Indeed, the fact that Robinson and Gibler received a copy of the motion for default judgment as well as the reinstatement motion, and still are not opposing Kemp's effort to reinstate the lawsuit on this appeal, diminishes any claim of prejudice that they might proffer.

## 3. Fair warning

"This court has repeatedly reversed district courts for dismissing cases because litigants failed to appear or to comply with pretrial orders when the district courts did not put the derelict parties on notice that further noncompliance would result in dismissal." *Wu*, 420 F.3d at 644 (internal quotations and citation omitted). "Prior notice, or the lack thereof, is thus a key consideration when determining whether a district court abuses its discretion in dismissing a case pursuant to Rule 41(b)." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 615 (6th Cir. 1998). There is no evidence indicating that the district court put Kemp on notice that dismissal was imminent. It could have, for example, issued a show-cause order requiring Kemp to explain why his case should not be dismissed with prejudice for failing to move for default judgment. Although the district court's case manager contacted Kemp multiple times after the final settlement conference, she did not give any indication

that the court intended to dismiss Kemp's case if he did not take further action.

## 4. Alternative sanctions

Finally, this Court has held that "in the absence of contumacious conduct, an alternate sanction that would protect the integrity of the pretrial procedures should be utilized rather than dismissal." *Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir. 1997). Indeed, "dismissal is appropriate only if the attorney's actions amounted to failure to prosecute and no alternative sanction would protect the integrity of pre-trial procedures." *Carter*, 636 F.2d at 161.

Here, Kemp's actions hardly threaten the sanctity of the trial process. Indeed, the district court did not impose any alternative sanction—nor are we certain that one was warranted—and instead, without prior notice or consideration of less severe sanctions, dismissed the case against Gibler and Robinson. Because such a harsh sanction was inappropriate, we conclude that the district court abused its discretion in dismissing Kemp's complaint.

## III. CONCLUSION

For the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.