NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0464n.06

Case No. 22-5022

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ANDREW LOVINGOOD, | ) | **FILED** |
|  | ) | Nov 17, 2022 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| MONROE COUNTY, TENNESSEE, | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF TENNESSEE |
| Defendant, | ) |  |
|  | ) | O P I N I O N |
| DERRICK GRAVES; BILL JOHNSON, | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |

Before: SUTTON, Chief Judge; STRANCH and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Plaintiff Andrew Lovingood appeals the district court's sua sponte dismissal of his action based on a failure to prosecute. For the reasons stated below, we **REVERSE** and **REMAND** for further proceedings.

I.

Andrew Lovingood sued Monroe County, Tennessee, and two police officers, Bill Johnson and Derrick Graves, following a traffic stop. Lovingood alleges that the officers tased and physically assaulted him during and after the stop in violation of his Fourth Amendment constitutional rights. Each of the parties except for Johnson filed motions for summary judgment. After having missed the response deadline for the county's motion, Lovingood requested an extension of time and subsequently requested leave to file a response. The court denied both

requests, but ultimately considered Lovingood's untimely response. The district court denied Lovingood's and Graves's motions for summary judgment and granted summary judgment to the county, dismissing Lovingood's claims against the county with prejudice.

The court scheduled trial for March 16, 2021, on the remaining claims, but the parties had concerns arising from the severity of the COVID-19 pandemic and Plaintiff's counsel had a conflicting jury trial date that was set prior to the filing of this case. Accordingly, the parties jointly moved for a continuance and the court reset the date to August 24, 2021. The court listed various requirements in its scheduling order for the August 24 trial date, including a date for the pretrial conference, a deadline for the parties to file a proposed joint final pretrial order, and instructions regarding the substance and format of the parties' witness lists and joint final pretrial order. For example, the amended scheduling order provided:

> For each defendant, each plaintiff shall concisely state each legal theory relied upon and the factual allegations the plaintiff expects to prove in support of each. Vague, conclusory, and general claims and allegations are unacceptable. A plaintiff is expected to know the claims and be able to state precisely and succinctly the issues to be tried. Each claim must be set out in a separately numbered and labeled paragraph.

The scheduling order included similar language for defendants and required that the parties file witness lists in accordance with Rule 26(a)(3). It additionally provided the following warning in bold font:

> **Failure to file an agreed pretrial order or to notify the undersigned's office that one cannot be agreed upon as required herein may be deemed a failure to prosecute the action and the action dismissed.**

The parties filed an agreed upon final pretrial order which set forth the facts of the case but did not state plaintiff's *legal* theories or claims as required by the scheduling order. Lovingood's attorney also listed several categories of damages in the pretrial order, including medical expenses, "loss of deprivation of constitutional rights," and compensatory, punitive, and nominal damages. And, he

submitted a list of 80 witnesses, but he also failed to identify the names of several witnesses and did not provide contact information for any.

On August 17, 2021, the district court held the first pretrial conference, during which the parties jointly requested a continuance because an essential witness was hospitalized due to COVID-19. During the conference, Plaintiff's counsel informed the court that he had confirmed with Lovingood the previous week that he was available to move forward with the trial but that he had been unable to reach Lovingood since that time. Plaintiff's counsel explained that Lovingood lives in his parents' home, his father had recently died from COVID-19, and his mother was diagnosed with COVID-19—which Plaintiff's counsel speculated may have affected Lovingood's mental health and fear of COVID-19 exposure. Both attorneys for defendants agreed that Lovingood has mental health conditions independent of his fear of COVID-19.

Before deciding the parties' joint motion, the court expressed its frustration with the pace of the case; the judge noted that he did not "think anybody want[ed] to try th[e] case." He further explained that the case was also partly complicated by Plaintiff's witness list, which included 80 entries for a four-day trial. The judge then asked Plaintiff's counsel whether he had deposed the listed witnesses. Plaintiff's counsel responded that he had not, and that the final witness list was not due until that day—the date of the August 17 conference. Plaintiff's counsel went on to explain that he and defense counsel had been actively discussing anticipated exhibits and witnesses. Plaintiff's counsel was able to narrow the witness list based on those discussions and knew who he planned to call. He also acknowledged that although he had listed several types of damages in the pretrial order, this was a nominal damages case. The district court ultimately continued the trial date to January 11, 2022, and issued a new scheduling order that rescheduled the pretrial conference to December 9, 2021, set the final witness list deadline for January 4, 2022, and

included the same dismissal warning set forth above.  The court also set out in bold and italics the requirement for Plaintiff that "***[e]ach claim must be set out in a separately numbered and labeled paragraph***" and added to the order that "simply reciting the facts of the case is not the same as stating the legal theory."

The parties again filed their witness and exhibit lists before the December 9 pretrial conference.  Plaintiff's counsel's second-filed witness list was identical to the first.  Neither party submitted an agreed pretrial order or notified the court that no agreement could be reached by the time of the pretrial conference.  Plaintiff's counsel explained that the parties had agreed the night before the conference to proceed with a bench trial instead of a jury trial and sought the court's guidance on how to revise the pretrial order accordingly.  Otherwise, he explained that the parties were prepared to file the pretrial order that same day.  According to Plaintiff's counsel, he had not filed a final witness list because he needed to reduce the list based on his discussions with defense counsel regarding proceeding with a bench trial and narrowing the exhibit list.  Throughout the December 9 conference, the court reflected on several issues that it apparently had highlighted at the August 17 pretrial conference:

- "[W]e talked about this some in August that you have to identify your actual claims and you can't, you can't put in your final pretrial order just your facts, but your theories."

- "[W]e talked about this in August like you can't do it this way.  You got to. . . limit your witnesses to the ones you're going to actually call."

- "I was very clear in August that failure to comply with the Court's order will result in a, a dismissal of the actions, and I either have to say it and mean it or don't say it."

Toward the conclusion of the December 9 conference, the court asked Plaintiff's counsel why the case should not be dismissed for failure to prosecute.  He responded that "it's not my case. It's the claim of my client, Mr. Lovingood, and he's the one that suffered injury at the hands of the

officers." The court interrupted Plaintiff's counsel to ask whether he intended to "pawn it off" on Lovingood. Plaintiff's counsel responded that he was not but was instead stressing that dismissal would bar Lovingood of his claims with prejudice. Plaintiff's counsel further explained that though he had not yet filed the final witness list, he had narrowed it to seven individuals. He also reiterated that his client suffered from mental health conditions, had just lost his father, and was dealing with his mother's illness, which Plaintiff's counsel believed may have caused the lag in communication between himself and Lovingood.

The district court dismissed Lovingood's case with prejudice at the conclusion of the hearing and entered an order to that effect the following day.

## II.

Pursuant to Fed. R. Civ. P. 41(b), district courts may dismiss an action sua sponte for failure "to prosecute or to comply with these rules or a court order." *See also Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980). "This court applies an abuse of discretion standard when reviewing the district court's dismissal of an action for failure to prosecute." *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993).

The court takes four factors into consideration when assessing the appropriateness of dismissals for failure to prosecute: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action." *Mulbah v. Detroit Bd. Of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001).

Importantly, we recognize that the Supreme Court has afforded "no merit to the contention that dismissal of [a plaintiff's] claim because of his counsel's unexcused conduct imposes an unjust

penalty on the client." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962). "However, recognizing that the sanction of dismissal with prejudice deprives a plaintiff of his day in court due to the inept actions of his counsel, this [c]ourt has expressed an extreme reluctance to uphold the dismissal of a case merely to discipline a party's attorney." *Mulbah*, 261 F.3d at 590. (citation and quotation marks omitted). Accordingly, we have "applied the four-factor test more stringently in cases where the conduct of a plaintiff's attorney is the reason for dismissal," and "we have increasingly emphasized directly sanctioning the delinquent lawyer rather than an innocent client." *Id.* at 591 (citation and quotation marks omitted); *see also Carter*, 636 F.2d at 161 ("Dismissal is usually inappropriate where the neglect is solely the fault of the attorney.").

In *Harmon v. CSX Transp., Inc.*, 110 F.3d 364 (6th Cir. 1997), we explained the more stringent application of the four-factor test relevant for cases where, as here, the dismissal hinges on the plaintiff's attorney's conduct rather than the plaintiff's own actions:

> With regard to the first factor, this court has stated that dismissal of an action for an attorney's failure to comply should only be ordered where there is a clear record of delay or contumacious conduct. Similarly, with regard to the third factor, the court has explained that where a plaintiff has not been given notice that dismissal is contemplated, a district court should impose a penalty short of dismissal unless the derelict party has engaged in bad faith or contumacious conduct. Finally, with regard to the fourth factor, although it is clear that the failure of the district court to impose or make explicit its consideration of lesser sanctions is not fatal, this court recently stated that, in the absence of such consideration, and in the absence of contumacious conduct, an alternate sanction that would protect the integrity of pretrial procedures should be utilized rather than dismissal with prejudice.

*Id.* at 367-68 (citations and quotation marks omitted).

For instance, in *Carter*, the attorneys on both sides failed to meet the court's scheduling order requirements, even though the order warned that noncompliance could result in dismissal. 636 F.2d at 160. Although the plaintiff's attorney's efforts were "wholly insufficient," this conduct alone did not warrant dismissal. *Id.* We described the attorney's conduct as follows:

> He failed to engage in discovery, to discuss settlement, and to file appropriate pre-trial orders in a timely fashion as ordered by the court. He did not move for a continuance. His disregard for the schedule established by the court could only have left him unprepared for trial. He did not file a Rule 60(b)(1) motion for post-judgment relief on the grounds of excusable neglect.

*Id.* But, noting that the plaintiff himself was blameless, we found that the district court abused its discretion in dismissing the case based on the attorney's conduct. *Id.* We explained that despite his dilatory efforts, the attorney had at least filed documents indicating his views and prosecution of the case. *Id.* Considering that neither party filed timely pretrial orders, conferred prior to the conference, or engaged in discovery, and the defendants had not moved for dismissal based on plaintiff counsel's noncompliance, we observed that the attorneys on both sides "seem[ed] equally dilatory." *Id.* We further noted that the lower court had not found that the defendant was prejudiced or that the plaintiff could not make the case ready for trial. *Id.*

We reached the same conclusion in *Stough v. Mayville Cmty. Schs.*, where the plaintiff's counsel failed to respond to motions for summary judgment twice, even after the first time resulted in the court granting the defendant's motion for partial summary judgment on the merits and ordering plaintiff's counsel to show cause as to why he should not be sanctioned. 138 F.3d 612, 613 (6th Cir. 1998). The plaintiff's counsel, who was not retained until after the motion had been filed, responded to the court's show cause order and the judge refrained from sanctioning him. *Id.* After the defendant filed a second motion for summary judgment, the plaintiff's counsel called the court to advise that he intended to file a response. *Id.* Plaintiff's counsel subsequently exchanged voicemails with the judge's law clerk regarding the status of the tardy filing, but after having not received plaintiff's counsel's response, the district court dismissed the action without notice that the court was contemplating dismissal. *Id.* at 613-14. Two business days later, plaintiff's counsel filed a motion for relief from judgment and responded to the motion for summary judgment and

the court's show cause order.[1]   In finding that the district court abused its discretion, we acknowledged that "a pattern of this type of behavior may be sanctionable," but we did not find that the court's harshest sanction of dismissal was warranted, especially where the district court judge had not made a specific finding of bad faith or prejudice. *Id.* at 615.

By contrast, we have found dismissal appropriate where the district court did not order dismissal until almost a year after the defendant served plaintiff's counsel with its original discovery requests and had not received a complete response. *See Harmon*, 110 F.3d at 368.  The plaintiff's counsel in *Harmon* did not respond to the defendant's requests for supplemental discovery, so the defendant followed up via letter. *Id.* at 365.  The plaintiff's counsel responded with a request for an extension, to which the defendant agreed. *Id.*  However, the plaintiff's counsel still missed the extended deadline. *Id.*  The defendant sent another letter stating that it would file a motion to compel if necessary, and after silence from the plaintiff's counsel, the defendant filed the motion. *Id.*  The court granted the defendant's motion to compel and ordered the plaintiff to respond to the discovery by a certain date. *Id.* at 366.  The plaintiff's counsel did not comply. *Id.*  Based on this, the defendant filed a motion to dismiss, and the plaintiff's counsel failed to respond. *Id.*  The district court then dismissed the case for failure to comply with the court's orders and failure to prosecute. *Id.* In finding that the district court did not abuse its discretion, we explained that "[the] record [was] more than adequate to establish that [plaintiff's] counsel was stubbornly disobedient and willfully contemptuous." *Id.* at 368.  We noted the prejudice the defendant faced, as it never received complete discovery, and wasted time, money, and effort in pursuit of the plaintiff's cooperation. *Id.*  We also found that the defendant's motion

---

[1] The opinion summarily states that the attorney responded to an order to show cause issued by the court but does not describe the nature of the order nor when it was issued.

to dismiss provided adequate notice that the court was contemplating dismissal. *Id.* Finally, that the district court had not considered alternative sanctions was not dispositive, considering the plaintiff's counsel's contumacious conduct. *Id.* at 369.

Similarly, dismissal was appropriate in *United States v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002), where "counsel was dilatory in providing initial discovery three months after it was due, failing to provide further requested discovery, and failing to respond to the United States' motion to strike, even after the district court sua sponte granted an extension of time." In that case, the district court "took the unusual step" of calling the plaintiff's counsel to remind him that he missed a deadline and allowing him additional time. *Id.* at 457. The plaintiff's counsel still failed to respond. *Id.* In holding that the district court had not abused its discretion, we found that this conduct was contumacious, the motion to strike provided adequate warning, and the government was prejudiced because the plaintiff's counsel's actions prevented it from complying with the court's discovery deadline. *Id.* Based on the weight of the first three factors, the court's failure to consider lesser sanctions was acceptable. *Id.*

## III.

Here, we find that the district court went too far in dismissing Lovingood's case with prejudice. The district court principally based its dismissal on Plaintiff's counsel's purportedly unexplained failure to file a sufficient witness list and agreed proposed pretrial order that properly set forth the parties' legal theories in compliance with the scheduling order, even after the court informed Plaintiff's counsel that the first filings were deficient. The dismissal order notes that "[u]pon inquiry by the [c]ourt as to why this action should not be dismissed for failure to prosecute and failure to comply with the [c]ourt's order, Plaintiff's counsel stated that this was not his case— rather, it was Mr. Lovingood's case." The district court also noted that Plaintiff listed extensive

damages in the pretrial order, but subsequently acknowledged that this was a nominal damages case. Finally, the dismissal order mentioned Plaintiff's counsel's failure to timely respond to Monroe County's motion for summary judgment. In the district court's view, Plaintiff's counsel's failure to comply with the court's schedules and failure to provide a justification for his shortcomings at the December 9 pretrial conference constituted contumacious conduct sufficient to warrant dismissal. We do not share this view.

First, the record does not support a finding of contumacious conduct. In their briefing, Graves and Johnson point to criminal proceedings and other litigation arising from the same incident that gave rise to the present lawsuit. They argue that this amounts to bad faith because Lovingood has been "toying" with them and the county but "has not offered an iota of proof" to support his claims. However, this argument holds no merit in the face of the district court's denial of Lovingood and Graves's summary judgment motions and Johnson's failure to file one. We have been presented with no reason to doubt the district court's finding that genuine issues of material fact remained in this case; nor are those rulings currently before us.

Further, while Plaintiff's counsel did not fully comply with the court's scheduling order, his conduct did not rise to the level of neglect displayed in *Carter*. *See* 636 F.2d at 160. In that case, the attorney failed to engage in discovery and settlement discussions and missed the deadline for pretrial orders. *Id.* at 160-61. We found that attorney's conduct to be "wholly insufficient," and it still did not rise to a level of misconduct sufficient to warrant dismissal of the entire action absent sufficient blame attributable to the plaintiff. *Id.* at 161; *see also Prime Finish, LLC v. ITW Deltar IPAC*, 608 F. App'x 310, 312, 315 (6th Cir. 2015) (reversing dismissal where intervenor failed to comply with several court orders requiring status report including a related order to show cause). Here, we cannot say that Plaintiff's counsel's conduct was wholly insufficient. He actively

participated in settlement negotiations, worked with defense counsel to discuss exhibits and witness lists, communicated with his client at least to some extent prior to the scheduled hearings, and appeared at all the hearings. Though he submitted the same insufficient witness list twice, he correctly pointed out at the December 9 conference that the deadline to file the final witness list had not passed. Plaintiff's counsel explained that he had narrowed the list from eighty individuals to seven based on his discussions with defense counsel and the parties' stipulation to proceed with a bench trial as opposed to a jury trial. He also clarified that the parties did not anticipate making any changes to the pretrial order that they previously agreed upon, beyond anything the court required as a result of the parties' recent stipulation. The district court rejected this explanation, reminding Plaintiff's counsel that the court discussed the proper format of the pretrial order with the parties at the August 17 conference. However, as Plaintiff argues, the district court made no such statement regarding the format and substance of the pretrial order. Rather, the court only instructed Plaintiff's counsel to narrow his witness list—which Plaintiff's counsel informed the court that he did and indicated that he would be ready to file the final list by the impending deadline.

Moreover, Lovingood's counsel's conduct is distinguishable from that of the attorneys in *Harmon* and *Reyes*, where we found that dismissal was warranted. In *Harmon*, the attorney repeatedly ignored the defense counsel's persistent pursuit of information through discovery requests, follow-up letters, a motion to compel, and a motion to dismiss following the plaintiff's counsel's non-responsiveness. 110 F.3d at 366–68. That attorney also ignored the court's order compelling him to produce information that the defendant had so tenaciously requested. *Id.* Similarly, the plaintiff's counsel in *Reyes* missed the discovery deadline by three months and failed to respond to the government's motion to strike even after the district court extended the deadline

on its own accord and afforded the plaintiff's counsel the benefit of a telephone call to remind him of the deadline. 307 F.3d at 457. By contrast, the defendants here have not mentioned any unanswered requests by Plaintiff's counsel and have not denied that the parties engaged in settlement negotiations and discussions in preparation for trial after the parties could not reach a resolution. *See Kemp v. Robinson*, 262 F. App'x 687, 691-92 (6th Cir. 2007) (finding dismissal improper where docket reflected nearly three years of inactivity, but parties were working diligently toward settlement off the record). And while the district court pointed out a section of the pretrial order that fell short of the court's requirement in the scheduling order, this error is not comparable to the attorney in *Harmon* who utterly failed to comply with the court's order.

We find our decision in *Stough* to be more instructive with respect to whether Plaintiff's counsel's conduct here was so contumacious as to justify dismissal with prejudice as the first sanction. The plaintiff's counsel in *Stough* missed the response deadline for two motions for summary judgment even after the court ordered him to show cause after missing the first. 138 F.3d at 613. That attorney failed to respond to the second motion even after the court's law clerk took his call regarding the tardy filing and exchanged voicemails with him regarding the outstanding response. *Id.* at 613-14. Still, we found that the court abused its discretion in dismissing the action. *Id.* at 616. In the instant case, Plaintiff's counsel filed an untimely response to a now-dismissed party's motion for summary judgment and filed the same insufficient witness list twice, which could signal a pattern of sanctionable behavior. His pretrial order also fell short of the court's requirements. However, just as we acknowledged in *Stough* that "a pattern of this type of behavior may be sanctionable," we reiterate here that not all sanctionable conduct warrants dismissal with prejudice. *Id.* at 615. While the district court's frustration is understandable, the dismissal order did not explain how Plaintiff's counsel's conduct amounted to bad faith, and absent

such explanation, a pattern of conduct that seemingly amounts to mistakes is not enough. *See Mulbah*, 261 F.3d at 590, 594 (reversing dismissal where counsel filed amended complaint seemingly to restart the clock after failing to timely serve original complaint, filed untimely response to motion to dismiss, failed to respond to discovery objections, and showed up to oral argument unprepared because he inadvertently brought wrong case file). And to the extent the court detected bad faith because it understood Plaintiff's counsel to be placing the blame on his client, the record does not support this view of the facts. Indeed, as soon as the court suggested at the December 9 hearing that Plaintiff's counsel was trying to "pawn it off on" his client, Plaintiff's counsel clarified that he was not trying to place any blame on Lovingood but was instead pleading the court to consider the prejudicial effect of dismissal on his client.

The second factor does not require much analysis, as the district court did not make a finding of prejudice. Graves and Johnson argue that they were prejudiced because they have had to spend money defending Lovingood's frivolous claims. But as we discussed above, the district court has already established that Lovingood's claims were not frivolous.

Regarding the third and fourth factors, Graves and Johnson argue that Lovingood was adequately warned by the Federal Rules of Civil Procedure and the court's scheduling orders and that the court should not be required to "perform mental gymnastics" to determine which sanction would be sufficient. The district court also emphasized the dismissal warning in its scheduling order and stated that less dramatic sanctions would not be sufficient. We do not agree.

Lovingood accurately maintains that the court did not give him sufficient notice that further noncompliance would result in dismissal, and its failure to consider alternative sanctions in this case was an abuse of discretion. *See Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988) ("In the Sixth Circuit, we have frequently reversed district courts for dismissing cases because litigants

failed to appear or to comply with pretrial orders when the district courts did not put the derelict parties on notice that *further* noncompliance would result in dismissal." (emphasis added)). The district judge stated at the December 9 conference that he "was very clear in August that failure to comply with the [c]ourt's order will result in a . . . dismissal of the actions, and [the court] either ha[d] to say it and mean it or don't say it." However, the transcript of the proceeding supports Plaintiff's argument that the court gave no such warning or even mentioned dismissal at the hearing in August. The only time the district court asked Plaintiff's counsel to show cause as to why the case should not be dismissed was at the December 9 hearing—the same hearing at which the court dismissed the case. Hence, the court's inquiry can hardly be considered a warning. Plaintiff's counsel explained that the case should not be dismissed based on the court's dissatisfaction with Plaintiff's counsel because his client is the one who suffered an injury. And to the extent that the court was referencing its warning in the scheduling order, our precedent suggests that such a boilerplate warning is not enough absent separate notice that dismissal was contemplated. *See Vinci v. Consol. Rail Corp.*, 927 F.2d 287, 288 (6th Cir. 1991) ("Although we do not mean to suggest that [the explicit dismissal warning contained in the scheduling order] should be construed as a hollow warning, we do not construe it to be, under the circumstances of this case, the kind of warning we envisioned in *Harris* when we spoke of notice that 'further non-compliance would result in dismissal.'" (emphasis omitted)).

As we explained in *Mulbah*, "[t]he question of adequate notice is also intertwined with the issue of alternative sanctions." 261 F.3d at 593. It is true here that the district court included the dismissal warning in both of its scheduling orders and bolded and italicized one sentence in its five-page amended scheduling order further instructing Plaintiff's counsel on its requirements for setting forth Plaintiff's legal theories in the pretrial order. However, we are not satisfied that

Lovingood's counsel had adequate notice that the court was contemplating its harshest sanction. *See id.* at 593-94 (reversing dismissal even where dismissal warning was contained in scheduling order and the defendants' motion to dismiss for failure to prosecute put the plaintiff on notice regarding the possibility of dismissal). This case is not like *Reyes*, 307 F.3d at 456-57, where the government moved to strike the plaintiff's claim after he failed to engage in discovery, and the plaintiff did not respond even after the court took the unusual step of calling the plaintiff to notify him that he missed the deadline to respond and extended the deadline sua sponte. Nor is it like *Harmon*, 110 F.3d at 366, where the court issued an order compelling the plaintiff to produce information and the defendant filed a motion to dismiss for failure to prosecute, which together amounted to sufficient notice to the plaintiff. Here, the district court did not indicate during the August 17 pretrial conference that dismissal was contemplated, and it did not issue any orders that would have suggested dismissal. Moreover, neither Graves nor Johnson filed any motions that would have put Lovingood's counsel on notice. Rather, as Plaintiff's counsel explained, the parties engaged in settlement negotiations and discussions in preparation for trial after they could not reach a resolution. The circumstances of this case suggest that the parties were trying to move this case along to trial. Accordingly, we find that the district court abused its discretion in dismissing Lovingood's claims with prejudice.

IV.

Notably, Graves and Johnson dedicate a considerable amount of their briefing to grounds not considered by the district court. They argue that it was Lovingood, rather than his attorney, whose conduct warranted the dismissal of his claims with prejudice. However, the court's dismissal order makes no mention of Lovingood's conduct but instead hinges the dismissal on his counsel's conduct alone. The court need not address this point, as we are satisfied that "[o]n

remand, the district court can consider appropriate sanctions both for [Lovingood's conduct] and for any other dilatory conduct it may find." *Stough*, 138 F.3d at 616.

V.

For the reasons set forth above, we **REVERSE** and **REMAND** the judgment of the district court.